GIBRALTAR FINANCIAL CORPORATION vs. LUMBERMENS
MUTUAL CASUALTY COMPANY.

Middlesex.   September 9, 1987. — October 7, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Insurance*, Burning of insured property, Construction of policy, Mortgagee's
interest. *Mortgage*, Insurance of mortgagee's interest.

The intentional burning of an insured motor vehicle by its owner was a loss
   within the meaning of the "standard mortgage clause" of a particular
   insurance policy [872], and was not one of the exceptions from coverage
   expressed in the unambiguous language of the loss payable clause [872-
   873].
No public policy considerations, in the absence of any involvement of the
   mortgagee of a vehicle in the intentional burning of the vehicle by its
   owner, precluded the mortgagee from recovering under an insurance
   policy as the designated loss payee. [873]

CIVIL ACTION commenced in the Superior Court Department
on May 23, 1986.

· A motion for partial summary judgment was heard by *Her-
bert Abrams*, J., who reported his ruling to the Appeals Court.
The Supreme Judicial Court transferred the case on its own
initiative.

The case was submitted on briefs.
*James L. Cornblatt & Philip S. Levoff* for the plaintiff.
*Anthony Hazen* for the defendant.

HENNESSEY, C.J.  The plaintiff (mortgagee) moved before
a Superior Court judge for a partial summary judgment that
would establish the plaintiff's right to recover under an insur-
ance policy issued by the defendant (insurer). The parties stipu-
lated that the plaintiff loaned money to the owner of a motor
vehicle, the loan was secured by a mortgage[1] on the vehicle,

---

[1] It is not entirely clear that the arrangement here was a mortgage, but it
is clear that there was a security arrangement which is not contested by the
defendant.

and the plaintiff was named as loss payee under a "standard Massachusetts commercial motor vehicle liability and physical damage policy" issued by the defendant. The vehicle was destroyed by reason of arson committed by the owner of the vehicle.[2] The judge denied the plaintiff's motion for partial summary judgment and reported to the Appeals Court the issue of the correctness of his ruling. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). This court took the case on its own motion. We conclude that the plaintiff's motion for partial summary judgment is to be allowed.

Lenders have long required borrowers to insure property in which the lender has a mortgage or other security interest to the benefit of the lender. See *Palmer Sav. Bank* v. *Insurance Co. of N. Am.*, 166 Mass. 189, 193 (1896). Customarily, a provision now known as an open mortgage clause was added to the policy requiring casualty proceeds to be paid first to the lender to the extent of the outstanding debt, with the remainder to be paid to the borrower. 5A J. Appleman, Insurance Law and Practice § 3401, at 282 (2d ed. 1970). To better secure lenders in such transactions, the open mortgage clause more recently is customarily modified to provide that the lender's coverage could not be forfeited by the act or default of any other person. This modified provision came to be known as a standard mortgage clause. Cf. G. L. c. 175, § 99 (1986 ed.).

The language of the loss payable clause of the policy here at issue creates such a standard mortgage clause, although that language provides less than blanket protection because it excludes coverage where the mortgagor converts, embezzles, or secretes the insured property.[3]

---

[2] The arson was stipulated only for this proceeding. The mortgagee's brief indicates that the owner was acquitted on a criminal charge of arson.

[3] The loss payable clause provides that: "Loss or damage, if any, under this policy shall be payable as interest may appear to the person or organization named in the declarations as Loss Payee and this insurance as to the interest of the Bailment Lessor, Conditional Vendor, Mortgagee or other secured party or Assignee of Bailment Lessor, Conditional Vendor, Mortgagee or other secured party (hereinafter called the Lienholder) shall not be invalidated by any act or neglect of the Lessee, Mortgagor, Owner of the within described automobile or other Debtor nor by any change in

The insurer argues that the policy defines "loss" as "direct and accidental loss" and, because it is stipulated that the owner intentionally burned the insured property, no covered casualty has occurred regardless of who presents the claim. In effect, the insurer contends that the underlying policy definition of loss should be applied here despite the presence of the standard mortgage clause. We reject this contention on two grounds. First, such a broad premise would allow the insurer to escape its basic promise to hold the mortgagee harmless from acts of the mortgagor. Second, if the argument that the mortgagee can recover only for an accidental loss is correct, then the inclusion of the specific prohibition on recovery (where the owner converts, embezzles, or secretes the property) is redundant and meaningless, because losses in these circumstances are never accidental. It is a standard rule of construction that interpretations which result in meaningless words are to be avoided. *Winchell* v. *Plywood Corp.*, 324 Mass. 171, 180-181 (1949). We conclude, therefore, that the term "loss," as it appears in the loss payable clause of the policy before us, includes both direct and accidental losses, and includes losses occasioned by any act or neglect of the owner except the conversion, embezzlement, or secreting of the insured property.

The insurer also argues that the owner's arson amounted to conversion of the mortgagee's interest in the insured property and is, therefore, within one of the exceptions to the loss payable clause. Because the language of the loss payable clause is clear and unambiguous, the words will be given their ordinary meaning. *Kolligian* v. *Prudential Ins. Co.*, 353 Mass. 322, 324 (1967). A simple reading of the loss payable clause reveals that it is a conversion of the insured property, not of the mortgagee's interest in that property, which would shield the

the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by Lessee, Mortgagor, Purchaser or other Debtor in possession of the property insured under a bailment lease, conditional sale, mortgage or other security agreement is not covered under such policy, unless specifically insured against and premium paid therefor, and provided, also, that in case the Lessee, Mortgagor, Owner or other Debtor shall neglect to pay any premium due under such policy the Lienholder shall, on demand, pay the same."

insurer from liability. Thus, the insurer's contention that the mortgagee's security interest was converted is irrelevant.

As to the argument that the insured property itself was converted when burned, it is enough to note that conversion requires an interference with property to which another has an immediate right of possession. See *Mechanics Nat'l Bank* v. *Killeen*, 377 Mass. 100, 115 (1979). Nothing in the record indicates that at the time of the arson anyone other than the owner had an immediate right to possess the insured vehicle. Burning of the vehicle by the owner was not a conversion. If insurers wish to avoid liability to mortgagees where owners burn their vehicles, then insurers should endeavor to add arson to the list of owner acts excepted from coverage.

The insurer argues that public policy should preclude recovery by the mortgagee here, because allowing recovery will encourage other owners to burn their vehicles. In the circumstances here, where there is no suggestion that the mortgagee was implicated in the burning of the vehicle, we discern no policy considerations that should prevail over the plain meaning of the loss payable clause.

The case is remanded to the Superior Court where the plaintiff's motion for partial summary judgment is to be allowed and further proceedings shall be consistent with this opinion.

*So ordered.*