Toomey, J.
Plaintiff, Commerce Insurance Company ("Commerce”), brought this action seeking a declaration from the Court that the amount, if any, defendant, Salvatore Scarcella (“Scarcella”), may recover under the uninsured provisions of the insurance policy he purchased from Commerce will be reduced by the amount of expenses that would have been payable under the personal injury protection (“PIP”) coverage of the policy had Scarcella not chosen a deductible. Commerce now moves for summary judgment on the ground that the language of the policy clearly and explicitly allows for such a reduction.
Scarcella cross-moves for summary judgment seeking a declaration that the amount which he may recover under the uninsured provisions of his policy ought not to be reduced by the amount of his deductible under the PIP portion of the policy. Scarcella claims that the language of the policy specifically excludes the “PIP deductible” from the amounts by which Commerce may reduce his recovery under the uninsured provisions of the policy and that any such reduction would contravene the legislative intent behind the “uninsured (and underinsured) motor vehicle statute.” G.L.c. 175, §113L. For the following reasons, Commerce’s motion is allowed, and Scarcella’s motion is denied.
BACKGROUND
The following facts are undisputed. On June 16, 1995, Scarcella bought a standard personal automobile liability policy from Commerce. Part 2 of the policy, providing PIP, commits the insurance company to pay to the insured (and other listed persons) certain medical expenses, lost wages and replacement services up to a maximum of $8,000. Part 2 recites, however, that the insured is to be excluded from some or all of the PIP coverage if he or she chooses a “deductible.” A deductible is that portion of each claim which the insured agrees will not be paid by the insurer under the PIP section of the policy. The policy provides that, by choosing a deductible and limiting the insurer’s exposure, the insured pays a lesser premium. At the time Scarcella purchased the policy from Commerce, he chose a deductible of $8,000, thereby waiving the entirety of his PIP coverage and paying a smaller premium to Commerce.
The policy also includes a provision, Part 3,' concerning uninsured motorists. Part 3 provides that the insurance company will pay damages for bodily injury to insureds injured in certain accidents caused by uninsured automobiles. Additionally, Part 3 permits the insurer to reduce the dollar amount an insured is entitled to recover under Part 3 by “[a]ny expenses that are payable or would have been payable except for a deductible under the PIP coverage of this policy or any other Massachusetts auto policy.”
On October 4, 1995, Scarcella was involved in an automobile accident in Somerville, Massachusetts. The accident was caused by a person driving a stolen vehicle. Therefore, Scarcella asserted an uninsured motorist claim against Commerce pursuant to Part 3 of the policy. The parties do not dispute that Scarcella was entitled to make such a claim. Their quarrel centers upon the quantum of recovery to which Scarcella is entitled under Part 3.
DISCUSSION
As the facts are not in dispute, this case turns on the proper interpretation and application of the uninsured motorist benefits provision of the subject policy. “The responsibility of construing the language of an insurance contract is a question of law for the trial judge . . .” Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). The Court should “construe the words of the [insurance] policy in their usual and ordinary sense.” Hakim v. Mass. Insurers’ Insolvency Fund, 424 Mass. 275, 280 (1997). However, because the uninsured motorist benefits portion of the subject policy is mandated by G.L.c. 175, §113L, the Court’s construction of the uninsurance provision of the policy must be consistent with legislative intent. Amica Mutual Ins. Co. v. Bagley, 28 Mass.App.Ct. 85, 90 (1989).
Commerce contends that the total amount paid to Scarcella under the uninsured motorist section of the policy should be reduced by $8,000, the amount that “would have been payable except for a deductible under the PIP coverage of this policy . . .” Policy, Part 3. Scarcella, on the other hand, argues that his recovery should not be thus reduced because the deductible language in Part 3 is ambiguous and ought not to be construed to exclude the deductible amount from that *466 which he would otherwise be entitled to recover under the uninsured provisions of the policy. In any event, he adds, such a reduction would be inconsistent with the legislative purpose underlying G.L.c. 175, §113L.
Contrary to Scarcella’s suggestion, the language of Part 3 of the subject policy is not ambiguous. See Lumbermens Mutual Casualty Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995) (“an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other”); Jefferson Ins. Co. v. Holyoke, 23 Mass.App.Ct. 472, 475 (1987). Part 3 provides that damages in the form of uninsured benefits will be reduced by “(a]ny expenses that are payable or would have been payable except for a deductible under the PIP coverage of this policy or any other Massachusetts auto policy.” Scarcella’s contention that the words “except for a deductible” modify “expenses” is inconsistent with the general rule of grammatical construction that “a modifying clause!, proviso, or exception] is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 123 (1986), quoting Moulton v. Brookline Rent Control Board, 385 Mass. 228, 230-31 (1982). Therefore, the phrase “except for a deductible” modifies “would have been payable,” its last antecedent.
Nothing in the subject matter or dominant purpose of Part 3 requires a different conclusion. In fact, the dominant purpose behind reducing uninsured benefits by certain expenses is to prohibit an insured’s obtaining double or windfall recovery, which, as discussed below, would result should he or she receive uninsured benefits without a reduction for the deductible which permitted the insured to avoid a greater premium cost. The quoted language is, therefore, not susceptible to more than one meaning and is clear and unambiguous. Jefferson Ins. Co., 23 Mass.App.Ct. at 475-76.
Furthermore, the Court will not construe the language of a contract or insurance policy to render words meaningless. See Worcester Mutual Ins. Co. v. Marnell, 398 Mass. 240, 245 (1986). See also Gibraltar Financial Corp. v. Lumbermens Mutual Casualty Co., 400 Mass. 870, 872 (1987) (“It is a standard rule of construction that interpretations which result in meaningless words are to be avoided”). If the Court adopted Scarcella’s interpretation of Part 3 of the policy, the words “would have been payable” would be nonsensical and meaningless. Scarcella’s PIP benefits “would have been payable” had he not chosen a deductible. He would have received $8,000 under the PIP portion of the policy except for the fact that he had earlier chosen an $8,000 deductible in exchange for lower premiums. Accordingly, under the terms of Part 3 of the policy, any uninsured benefits paid to Scarcella should be reduced by $8,000, the amount Scarcella would have received under the PIP coverage of the policy had he not opted for a deductible.
The Supreme Judicial Court has observed that, “Nothing in the language or policy of c. 175, §113L (1990 ed.), the uninsured and underinsured motorist statute, is contrary to the unambiguous language contained in the [Commerce policy] in question.” Allstate Ins. Co. v. Bearce, 412 Mass. 442 (1992). Section 113L “is designed ‘to protect [the] public from injury caused by motorists who could not make the injured party whole,’ subject, of course to the limits provided in the insured’s policies.” Cardin v. Royal Ins. Co., 394 Mass. 450, 454 (1985), quoting Surrey v. Lumbermens Mutual Casualty Co., 384 Mass. 171, 177 (1991). This statute compensates accident victims, at least in part, for injuries caused by uninsured or underinsured motorists. Allstate Ins. Co., 412 Mass. at 448. Commerce’s position in the controversy at bar is in accord with the objectives of the legislative draftsmen.
The off-set contained in Part 3 of the policy for PIP benefits actually received or for PIP benefits which would have been received had Scarcella not chosen a deductible (and thereby enjoyed a lesser premium) does not frustrate the legislative purpose in enacting §113L. Scarcella will still be fully compensated for his injuries; he will, however, not collect a windfall, to wit, the deductible amount and the lesser premium. Amica Mutual Ins. Co. v. Bagley, 28 Mass.App.Ct. 85, 89 (1989) (both the PIP and uninsurance/underinsurance schemes “have as an objective the avoidance of duplicate recovery”). Scarcella chose a deductible for the full amount of potential PIP benefits for which he was eligible. That option allowed Scarcella to pay lower premiums, the savings from which comprise a type of advance to his benefit. Therefore, rather than receiving $8,000 under the PIP provisions after his accident, Scarcella received, constructively, money “up front” in the form of lower premiums. The amount paid to Scarcella, whether as PIP benefits or as savings derived from his choosing an $8,000 deductible and the consequent lower premiums, can be subtracted from any uninsured benefits received without contravening §113L. See Amica Mutual Ins. Co., 28 Mass.App.Ct. at 89 (amount paid under PIP coverage of a New York policy to be subtracted from uninsured or underinsured coverage).[1] See also Mayo v. Aetna Casualty & Surety Co., 419 Mass. 596, 599 (1995) (holding that reduction in underinsurance by workers’ compensation benefits received does not contravene §113L as that statute tries to prevent double recovery, thereby lessening the cost of motor vehicle insurance). This off-set is comparable to the tortfeasor’s exemption from liability for the amount the insured is eligible to collect in PIP benefits or for the amount of benefits the insured would have received under PIP coverage but for the fact the insured chose a deductible. See Pinnick v. Cleary, 360 Mass. 1, 7-8 & n.4 (1971).
*467 The Supreme Judicial Court’s opinion in Cardin v. Royal Ins. Co., 394 Mass. 450 (1985), is not to the contrary. Although the Cardin Court held that “any exclusion” to the uninsured motorist coverage is contrary to the legislative intent behind §113L, id. at 452 (emphasis added), the Court in Johnson v. Hanover Co., 400 Mass. 259 (1987), glossed the Cardin rule by observing that Cardin's language must be interpreted in light of the facts at issue in Cardin. Johnson, 400 Mass. at 264 n.8. Cardin involved a “regular use exclusion” to underinsured and uninsured coverage, which the Court held was not provided for under §113L. Unlike Cardin, the instant case involves an off-set for benefits already received (in the form of savings from payment of lower premiums) by the insured. Section 113L does not prohibit such an offset and even advocates the prevention of windfall recovery. Amica Mutual Ins. Co., 28 Mass.App.Ct. at 89. See also Smart v. Safety Ins. Co., 419 Mass. 144 (1994) (anti-stacking legislation, §113L(5), inserted by St. 1988, c. 273, §47).
CONCLUSION
This Court declares, therefore, that any amounts paid by Commerce under the uninsured coverage of the policy issued to Scarcella (Part 3) may be reduced by Scarcella’s $8,000 deductible. To hold otherwise would be to paddle upstream against the flow of the contract, the statute and the legislative policy against windfall recoveries.
ORDER
It is hereby ORDERED that Commerce’s Motion for Summary Judgment be ALLOWED, and Scarcella’s Motion for Summary Judgment be DENIED.

 Scarcella does not argue that subtracting PIP benefits received from uninsured coverage contravenes §113L and instead distinguishes the instant case from Amica Mutual Ins. Co.. 28 Mass.App.Ct. 85, on the ground that Scarcella did not receive any benefits. However, although Scarcella did not receive any PIP benefits, he did receive the cognate benefit of lower premiums by choosing a deductible. The savings enjoyed by Scarcella from paying lower premiums are equivalent to the receipt of PIP benefits for the purpose of preventing windfall recovery under the uninsured provisions of the policy. Therefore, just as PIP benefits paid may be subtracted from uninsured coverage, so may the amount of the deductible chosen under the PIP provisions.